UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

VIVIANN W. BROWN, et al.,

    Plaintiffs,

v.

JC PENNEY CORPORATION, INC., and JOHN DOES and JANE DOES 1-10,

    Defendants.

CASE NO. C17-6044 BHS

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on Defendant JC Penney Corporation, Inc.'s ("JC Penney") motion for summary judgment. Dkt. 17. The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby denies the motion for the reasons stated herein.

## I. PROCEDURAL HISTORY

This slip and fall negligence action arises out of an injury sustained by Plaintiff Vivian Brown ("Mrs. Brown") while at a JC Penney department store in Kitsap County, Washington.

On November 8, 2017, Mrs. Brown, her husband Plaintiff Elwood Brown ("Mr. Brown") and their adult daughter Plaintiff Maggi Brown (collectively "the Browns")

ORDER - 1

filed a complaint in Kitsap County Superior Court for the State of Washington. Dkt. 1, Ex. 3. The Browns assert a sole premises liability action as business invitees of JC Penney. Dkt. 1, Ex. 3. On November 11, 2017, JC Penney removed the action to this Court. Dkts. 1–3.

On July 13, 2018, JC Penney moved for summary judgment. Dkt. 17. On August 17, 2018, the Browns responded. Dkt. 20.[1] On August 22, 2018, JC Penney replied. Dkt. 21.

## II. FACTUAL BACKGROUND

On December 20, 2014, the Browns traveled to the Silverdale JC Penney store to complete shopping for the upcoming Christmas holiday. Dkt. 20, Declaration of Carrie Eastman ("Eastman Decl."), Ex. A. December 20, 2014 was a rainy day, and it was raining when the Browns arrived at JC Penney. *Id.*, Ex. C.

To access JC Penney, customers enter through a set of exterior doors leading into a carpeted vestibule, and then pass through interior doors leading into the department store. *Id.*, Ex. A. The Browns entered JC Penney at the men's department. *Id.* At the men's department entrance, the store is separated from the vestibule by a set of double doors made up of a left-hand-side door and a right-hand-side door. *Id.*; *see also* Eastman Decl., Ex. D at 62. On December 20, 2014, JC Penney had placed a rug in front of the left

---

[1] The Browns mistakenly filed two responses. *Compare* Dkt. 19 (entitled Plaintiff's Disclosures of Expert Testimony, yet docketed as a summary judgment response and substantively written as a summary judgment response) to Dkt. 20. The Court will disregard Dkt. 19 and reference Dkt. 20 throughout this order.

door, but the right door did not have a corresponding rug in front of it. *Id.*, Ex. A. The department store floor is tile. *Id.*

Maggi Brown suffers from multiple sclerosis and depends on a wheelchair for mobility. *Id.*, Ex. B. Mr. Brown was pushing Maggi's wheelchair as they entered the vestibule doors from the parking lot. *Id.* Mrs. Brown held an open umbrella to protect her and Maggi from the rain. *Id.* The Browns proceeded across the vestibule, and at the interior doors, Mrs. Brown closed the umbrella and held the right side door open for Mr. Brown as he pushed Maggi's wheelchair through the doorway. *Id.* Mrs. Brown then entered JC Penney behind Mr. Brown and Maggi. *Id.* After taking one or two steps into the store, Mrs. Brown slipped and fell on water pooled on the bare tile floor. *Id.*, Ex. A.

After falling, Mrs. Brown remained on the floor in pain. *Id.* A young man was the first JC Penney employee to approach her, and he tried to assist Mrs. Brown off of the floor. *Id.* Maggi Brown heard the young employee state that he had "just wanted to mop that up." *Id.*, Ex. B, 6:25–7:1. Mrs. Brown recalls that her pants were wet, that she felt the wetness, and that when she stood up, she observed a puddle of water on the tile floor. *Id.*, Ex. A, 27:24–28:1.

Two female JC Penney employees, "Suzie" and manager Beverly Nelson ("Ms. Nelson"), approached after the young man. *Id.* Ms. Nelson took a statement from Mrs. Brown, apologized, and informed her that JC Penney had taken and moved the right door rug to a location where another fall had occurred earlier that same day. *Id.*, Ex. A, 32:17–33:8. Mrs. Brown states that Ms. Nelson also told her that JC Penney had a shortage of

rugs. *Id.* While Ms. Nelson does not refute these statements, she testified in deposition that she does not recall them. *Id.*, Ex. D.

While Ms. Nelson took an incident report from Mrs. Brown, other JC Penney employees mopped up the puddle of water. *Id.*, Ex. A. JC Penney employees also turned the rectangular rug in front of the left door sideways, so that it would now cover both sets of doors. *Id.*

In deposition, Ms. Nelson later testified that JC Penney's policy was to put out "wet floor" signs whenever it rained. *Id.*, Ex. D. Ms. Nelson testified that she was familiar with the tile floor at the Silverdale JC Penney's and knew it to be slippery when wet. *Id.* Ms. Nelson also testified that ordinarily, each set of double doors would have a rug in front of it. Lastly, Ms. Nelson testified that JC Penney maintained its floor with periodic waxing. *Id.*

Mrs. Brown sustained injuries of a broken wrist, a bruised hip, and back pain. *Id.*, Ex. A.

### III. DISCUSSION

**A. Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

(1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

### B. Merits of Summary Judgment

Mrs. Brown asserts that she slipped and fell in a puddle of water while walking into a common area of a JC Penney department store on a rainy December day. Prior to her fall, Mrs. Brown did not notice anything on the floor. Nor did she herself have any knowledge of how long the water she slipped on had remained on the floor. *See* Eastman Decl., Ex. A; Dkt. 17 at 4:6–13. JC Penney moves for judgment, arguing that the Browns fail to establish that JC Penney had actual or constructive notice of the pooled water, and in the alternative, that the Browns fail to establish that pooled water on a floor, without more, is unreasonably dangerous. Because the Browns submitted evidence of JC Penney's actual notice of the pooled water and evidence that JC Penney employees knew the waxed tile floor to be slippery when wet, the Court concludes that there is a genuine dispute over material facts at issue which precludes summary judgment. Accordingly, JC Penney's motion is denied.

#### 1. Notice

It is undisputed that the Browns were invitees to JC Penney's business. *See* Dkts. 20, 5:9–10; 17, 3:10. In general, for a possessor of land to be liable to a business invitee for an unsafe condition of the land, the possessor must have actual or constructive notice of the unsafe condition. *Ingersoll v. DeBartolo, Inc.,* 123 Wn.2d 649, 652 (1994) (citing *Smith v. Manning's, Inc.*, 13 Wn.2d 573 (1942)). It is the invitee's burden to show that the premises owner had actual or constructive notice of the hazard. *Tavari v. Walmart Stores, Inc.*, 176 Wn. App. 122, 307 (2013).

Here, the Browns produced probative, admissible[2] evidence to support their claim that JC Penney had actual notice of the water pooled on the floor, in the form of deposition testimony from Maggi Brown, who heard a male JC Penney employee exclaim that he "just wanted to mop that up." This statement alone establishes a factual dispute over JC Penney's actual notice of the water puddled on its floor, which is a material issue in this case. Although JC Penney argues that the statement does not show that JC Penney knew that water was on its floor for any length of time, focusing on the modifier "just", the statement taken as a whole establishes that, in contextual reference to the puddle, the employee "just wanted to mop that up"—i.e., that the employee both *knew* that water was puddled on the floor, and also desired to clean it up. While JC Penney contends that this statement is self-serving, this argument is improper for summary judgment, where the Court must weigh the evidence in the light most favorable to the Browns. Moreover, the extent to which the statement is self-serving and if so, inferences drawn from that, are credibility determinations properly reserved to the trier of fact. Because the Browns meet their burden to establish a dispute over JC Penney's actual notice of the hazard, an essential element of their claim, JC Penney's motion must be denied. *See Liberty Lobby, Inc.*, 477 U.S. at 253; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630.

---

[2] *See Campbell v. Boston Scientific Corporation*, 882 F.3d 70, 78–79 (4th Cir. 2018) (evidence against defendant manufacturer in products liability action was not hearsay because evidence was offered to show that defendant was on notice of potential safety concerns).

**2. Danger**

JC Penney next argues that the Browns fail to establish that the puddled water was unreasonably dangerous. Dkt. 17, § C. It is true that the mere presence of water and a resulting fall is insufficient to support an *inference* that a dangerous condition existed. *See Smith v. Food Pavilion*, 174 Wn. App. 1056 (2013); *Brandt v. Mkt. Basket Foods*, 72 Wn.2d 446, 451 (1967); *see also Wiltse v. Albertson's, Inc.*, 116 Wn.2d 452, 459 (1991). But here, the Browns provide more to establish a hazard than the mere fact that Mrs. Brown slipped on water while at JC Penney. *See, e.g.*, Eastman Decl., Ex. D, Deposition of Beverly Nelson (manager testifying that in addition to the fact that it was raining and that plaintiff fell, manager knew that JC Penney's tile floor was slippery when wet, that JC Penney placed rugs and signs to mitigate the danger of wet floor when it rained, and that JC Penney waxed the floor periodically).[3] This testimony from JC Penney's own employee moots any argument that the Browns have not established danger through *inference* from the presence of water and a fall—because indeed, they establish the danger in and of itself. Accordingly, the Court also denies JC Penney's motion for summary judgment on this issue.

---

[3] This testimony, and the absence of a rug, sign, or safety cone when plaintiff fell, may also be relevant when considering whether the hazard was reasonably foreseeable to JC Penney.

## IV. ORDER

Therefore, it is hereby **ORDERED** that JC Penney's motion for summary judgment, Dkt. 17, is **DENIED**.

Dated this 9th day of October, 2018.

BENJAMIN H. SETTLE
United States District Judge